**Virginia Lawrence BLAND and Raymond Lee Wilson, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 18664.**

United States Court of Appeals Fifth Circuit.

Feb. 1, 1962.

Rehearing Denied March 7, 1962.

---

4. Sampsell v. Imperial Paper Corp., 1941, 313 U.S. 215, 219, 61 S.Ct. 904, 85 L. Ed. 1293; In re Columbia Ribbon Co., supra, 117 F.2d at 1002.

Harvie S. Duval, Richard R. Booth, Miami, Fla., for appellant Virginia Lawrence Bland.

Walters, Moore & Costanzo, Miami, Fla., for appellant Raymond Lee Wilson.

Paul E. Gifford, Asst. U. S. Atty., Miami, Fla., Edward F. Boardman, U. S. Atty., S. D. of Florida, Miami, Fla., for appellee.

Before JONES and BELL, Circuit Judges and SIMPSON, District Judge.

SIMPSON, District Judge.

Appellants Virginia Lawrence Bland and Raymond Lee Wilson were convicted of bringing two aliens into the United States, knowing that those aliens were not duly admitted by an immigration officer and not entitled to enter or reside in the United States; in violation of Title 8 U.S.C.A. § 1324.[1]

---

1. In pertinent part, Section 1324 provides "(a) Any person, including the owner, operator, pilot, master, commanding officer, agent, or consignee of any means of transportation who—

"(1) brings into or lands in the United States, by any means of transportation or otherwise, or attempts, by himself or through another, to bring into or land in the United States, by any means of transportation or otherwise; * * *

"Any alien, including an alien crewman, not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States under the terms of this Chapter or any other law relating to the immigration or expulsion of aliens shall be guilty of a felony, and upon conviction thereof shall be punished by a fine not exceeding $2000 or by imprisonment for a term not exceeding five years, or both, for each alien in respect to whom any violation of this subsection occurs: * * *."

It is noteworthy that subsection (1) above omits any requirement that the offense be committed willfully or knowingly, while subsection (2) uses the word "knowingly" and subsections (3) and (4) uses the words "willfully or knowingly."

The indictment here, brought under subsection (1) of the Statute, nevertheless charged knowledge. It read

"The Grand Jury Charges:

That on or about June 24, 1959, in Broward County, in the Southern District of Florida,

VIRGINIA LAWRENCE BLAND
and RAYMOND LEE WILSON

who were then and there pilots of an aircraft, did fly and bring into the United States Hiram Gomez Rodriguez and Roman Gomez Miranda, and they then and there knew that the said Hiram Gomez Rodriguez and Roman Gomez Miranda were aliens not duly admitted by an immigration officer, and not lawfully entitled to enter and reside in the United States; in violation of Title 8, United States Code, Section 1324.

A True Bill"

The trial judge, as will be developed herein, recognized the necessity for proof of *knowledge* in his original instructions.

Appellants admitted that they flew to Cuba on June 24, 1959 for the purpose of bringing an anti-Castro Cuban, Hiram Gomez Rodriguez, back into the United States. Appellants were successful in picking up Hiram Gomez and his father Roman Gomez Miranda, who asked to come along when appellants picked up Hiram.

Appellants returned to the United States with their two passengers, landing at a small airfield used only by private planes, North Perry Airport in Broward County, Florida. It was stipulated that this airfield was not an authorized port of entry of the United States. Appellants also admitted that they had not filed a flight plan for their trip to Cuba and that they had not informed U. S. Immigration authorities that they were bringing aliens into this country.

It was brought out at the trial that neither Cuban had a valid immigrant's visa issued by the United States, but both had various papers in the nature of passports and visas.

In his charge, the trial judge explained the meaning of the term "not duly omitted by an immigration officer." To amplify this term, he quoted from regulations enacted pursuant to the Immigration and Naturalization Act, 8 C.F.R. Sec. 239(b) and Sec. 239(c). These regulations provide that a pilot bringing aliens into this Country has a duty to notify immigration authorities of the time and place of arrival, unless the flight is one of a regularly scheduled airline. The regulations also provide that the aircraft shall not permit passengers requiring inspection by an immigration officer to depart from the plane without permission from an immigration officer.

The Judge went on to charge that an alien was not lawfully admitted until after proper inspection. Under this instruction, the jury was compelled to find that the Cubans brought into the United States by appellants were not "duly admitted". Appellants admitted that they landed at an airport not a port of entry into this country, and that they did not notify immigration officers of their arrival. The aliens were not presented for inspection as required by the regulations.

Bringing aliens not duly admitted into the United States is a violation of Title 8 U.S.C. § 1324, even if the aliens have the proper papers for entry. Sotorios Targakis v. United States, 12 F.2d 498 (5 C.A., 1926) passing on the predecessor to Title 8 U.S.C. Sec. 1324.

The defense raised by appellants involved lack of knowledge and intent. Both defendants testified that they believed both aliens had all of the proper papers and that they were doing nothing illegal in bringing them into the United States.

Wilson testified that he did not file a flight plan for the June 24 trip because he was afraid that the Cuban authorities would learn of his trip and interfere with his plan. On June 6, 1959, Wilson had flown to Cuba with another pilot for the same purpose, to pick up Hiram Gomez, but had been prevented from doing so by the interference of Cuban authorities. Wilson testified that he wanted to keep the June 24 trip as secret as possible. He further testified that he did not notify the U. S. Immigration authorities that he was returning with aliens because he realized that his flight to Cuba without filing a flight plan could result in the loss of his pilot's license. It was to protect his license, not to hide the aliens, that he did not notify the proper authorities, Wilson testified.

The indictment, under which appellants were tried, charged that they *knew* that the aliens were not duly admitted and entitled to enter and reside in the United States. Appellants denied such knowledge. The trial judge further charged that appellants would not be guilty if they did not have such knowledge, and did not bring in the aliens with the intent to evade and elude inspection by Immigration officers as required by law.

This was the only defense left to appellants since the Judge had charged the jury as a matter of law from the

undisputed facts that the aliens were not duly admitted.

The jury retired to consider the case and, four hours later, returned with a request that the Judge repeat the statute earlier read to them. The Judge complied by reading what he considered to be the pertinent parts of Title 8 U.S.C. § 1324(a), in essence, that any person who brings into the United States or lands in the United States an alien not duly admitted by an Immigration Officer or not lawfully entitled to enter or reside within the United States under the terms of this chapter or any other law relating to the immigration or expulsion of aliens, shall be guilty.

■ In his original charge the District Judge had correctly taken the position that guilty knowledge was a material element of the offense, since the indictment charged it, and for the further reason that the statute would be unconstitutional if construed so as to permit a finding of guilt without such knowledge. But upon request for further charges he failed and refused to remind the jury of this requisite matter of proof, upon the stated ground that the statute was all that the jury had requested to hear.

This Court has recently held that when the jury requests further instructions on points which are favorable to the Government, the trial judge should repeat instructions favorable to the defense where the requested instructions taken alone might leave an erroneous impression in the minds of the jury. Perez v. United States (No. 18864, 5 C.A.December 21, 1961, 297 F.2d 12).

The jury could take literally the phrase "shall be guilty" found at the end of the statute and the danger is great that they were misled and gave no further thought or consideration to the proposition that violation without knowledge or intent would not constitute the offense charged. The trial judge did not further allude to the indictment which, it should be reemphasized, carried the allegation of "knowingly".

Failure to do more than re-read the Statute involved in this case was prejudicial to the rights of the appellants.

■ Appellants' counsel made timely objection to the failure of the trial judge to bring to the jury's attention all the elements required to be proved to establish guilt as set out by him in his earlier complete instructions. This is to say, objection was made to the omission of repeated instructions requiring proof of knowledge and intent as necessary ingredients of the charged offense. These objections were voiced as soon as the jury left the Courtroom, and the point is properly preserved in the records for our consideration.

The colloquy between Court and Counsel set out [2] in the margin makes clear

2. "THE COURT: In the absence of the jury, do the defendants have any objection to the additional charge read to the jury?

"MR. DuVAL: Yes, your Honor. The defendants do have distinct objections, in that it is taking out of context a particular item, and it doesn't say what rule and what proof has to be adduced to find a person guilty under it. In other words, you have got beyond that the three things that have to be proven, the essential allegations, and all of the items which have to be done. I think if you are going to read just the statute, that the entire charge, everything should be read, because it places a complete emphasis on one little item.

"THE COURT: Mr. DuVal, I asked the jurors if they, having heard the complete charge this morning, if they wanted anything else, and that is what they said.

"MR. DuVAL: Yes, your Honor, I realize that is what they said. But now they have got one thing that is completely emphasized in their minds, and all it does is say if they brought somebody in they are guilty. That is just about, in fact, all that you have read to them. It doesn't say under what circumstances, or whether they intentionally or knowingly or concealed, or any of the items that you have gone into.

"In fact, right beyond that particular statute you explain in your original charges what is required for them to have proven to them, which wasn't read, and they only have now—if you will.

that the trial judge was precisely informed as to what the omission was, and its claimed effect.

It would strain credulity to suppose that the original instructions of four hours earlier, explaining the statutory elements of guilt, and adding the additional requisites of knowledge and intent, were still fresh in the minds of twelve lay jurors. If their minds needed refreshing as to the terms of the statute, it is an inference so strong as to be conclusive, that the further instructions, explaining that knowledge must be proved, and raising the sole factual issue still in doubt under the evidence, had also by then completely gotten out of the minds of the jurors. The defendants were effectively stripped of their sole defense and conviction became a foregone conclusion.

It is not beside the point to suggest that lawyers and judges, trained to follow language closely and to draw close distinctions as to its meaning, would themselves be at a complete loss to remember modifications of a forgotten rule of law. This, in essence, is the impossible task expected of twelve untrained laymen here. The fatal flaw is obvious and needs no further belaboring. The judgment must be reversed and remanded for this reason.

Appellants have raised several other points in their brief. We dispose briefly of those meriting discussion.

 Title 8 U.S.C. § 1324, is not unconstitutional by reason of vagueness. The phrase "not duly admitted by the Immigration officer or not lawfully entitled to enter or reside within the United States" is defined by reference to the laws relating to immigration or expulsion of aliens. While there are a great number of laws on this matter, each is specific enough to inform a person of what acts are prohibited and when any one of them is read back into Title 8 U.S.C. § 1324, the above quoted phrase acquires specific meaning.

Appellants challenge the sufficiency of the indictment. This indictment charged the offense almost exactly in the words of the statute claimed to be violated. Such an indictment is sufficient if the statute contains all the essential elements of

---

read that, exactly what you read, to yourself, you will see that it is quite unfair to the defendants.

"And in addition to that, your Honor, you didn't read the indictment. The indictment is what they are being tried on.

"THE COURT: Mr. DuVal, what we mustn't lose sight of is that the jury came in and asked for a specific thing to be read to them. I assume that they knew what they were talking about. I read this to them, asked them if that is what they wanted. They unanimously said it was. And if I went out and started to read to them things which they didn't ask for, and began to assert upon them or push upon them things which they didn't ask for, there might be more objection raised than to do precisely what I did, and that is, to tell them in reply to their specific request the very thing they asked for.

"Now, if you are complaining that I have paraphrased the statute wrong, I don't follow you.

"MR. DuVAL: Your Honor. I have already made that objection originally, that you were paraphrasing the statute wrong.

"THE COURT: Wherein have I left anything out of the statute?

"MR. DuVAL: The 'knowingly and willingly.'

"THE COURT: Oh, I see. You were talking about that?

"MR. DuVAL: Also, you have added in there—

"THE COURT: You are allowed to have that objection, and I think you should make it.

"MR. DuVAL: Also, you read 'in violation of any laws,' and you haven't designated which law it may be. They can come up with anything. It says, 'any law.' They have violated the flight plan thing. Whoppo, they can be convicted.

"THE COURT: I didn't read that statute. Is there anything further here now?

"MR. DuVAL: No. I request the jury be called in and read all of the charges as to evidence and what else is needed to be proven and how it should be proven to find a verdict of guilt or innocence under that statute.

"THE COURT: For the reasons I have given, I am going to deny that. Is there anything from the Government?" (Tr. pp. 326–329)

the offense. Reynolds v. United States, 225 F.2d 123 (5 C.A., 1955), cert. denied 350 U.S. 914, 76 S.Ct. 197, 100 L.Ed. 801, rehearing denied 350 U.S. 929, 76 S.Ct. 301, 100 L.Ed. 812.

In this indictment, it was also charged that appellants knew that the aliens were not duly admitted or entitled to enter or reside in the United States. This added allegation, together with the statutory words in the indictment, gave the required certainty to the indictment. ·

■ Appellants requested additional facts through a motion for bill of particulars. The Government furnished them with the information requested and appellants, apparently satisfied with the Government's compliance, made no motion requesting additional information and agreed to the denial of their motion to dismiss the indictment. Appellants cannot now claim that they were not furnished with sufficient facts.

■ Appellants finally object to the Judge's reading regulations relating to the duty of an aircraft not regularly scheduled, and bringing aliens into this country. These regulations helped to explain what is meant by the term "duly admitted by an immigration officer". The meaning of this term was properly given by the Judge, since statutory definitions are in his province. He carefully instructed the jury that violation of these regulations alone did not constitute the offense charged and went on to instruct exactly what acts and state of mind were necessary to be shown by the Government to justify a conviction. Any prejudice to appellants was cured by these further instructions. Further instructions may correct a possible error previously made, United States v. Tadio, 223 F.2d 759 (2 C.A.1955) cert. denied 350 U.S. 874, 76 S.Ct. 119, 100 L.Ed. 772.

· We find no reversible error except the Judge's failure to reinstruct the jury on the issues of knowledge and intent when he re-read the statute at the jury's request. The case must be reversed and remanded for this reason.

Reversed and remanded.